## THE FORT GEORGE.

(District Court, S. D. New York. October 6, 1909.)

COLLISION (§ 62*)—TUGS AND TOWS—NEGLIGENCE.

Towing on a hawser in the Delaware River. The tow collided with and damaged an anchored dredge. There were only six inches of water between the bottom of the barque and the bottom of the river. *Held* that the tug was in fault for proceeding with an insufficient draft for the tow, and for casting off the hawser when in the proximity of the dredge, and the barque, knowing the facts, was also in fault for allowing the tug to proceed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 80; Dec. Dig. § 62.*]

(Syllabus by the Judge.)

In Admiralty. Action by the Maryland Dredging & Contracting Company against Frank L. Neall and the barque Fort George. Decree for libellant.

Robert H. Smith and Wing, Putnam & Burlingham, for libellant.
Robinson, Biddle & Benedict, for Neall.
Wallace, Butler & Brown, for the Fort George.

ADAMS, District Judge. This action was brought by the Maryland Dredging and Contracting Company, the owner of the dredge Vim, against Frank L. Neall, Trustee, owner of the tug Sommers N. Smith, to recover the damages, said to amount to $9,000, resulting from a collision between the Vim and a barque in tow of the Smith in the Delaware River, about 10:30 a. m. of the 8th of December, 1906. Neall brought the barque Fort George into the action by petition. The allegations against the Smith are that the Vim was at work deepening the river in the Deep Water Point Range Channel in the vicinity of Pennsville, New Jersey, and New Castle, Delaware, under a contract with the Government of the United States. The dredge was lying with her head to the northward, being held in position by lines running from either side to anchors. The Smith had the Fort George in tow on a hawser of about 70 fathoms and was bound to sea from Philadelphia. The weather was clear, the wind light from the north and the tide the last of the ebb. As the tug and tow approached, all the lines on the eastward or starboard side of the dredge were slackened and sufficient room left for the tug and tow to pass safely on that side. Other dredges were working in the vicinity, the Chesapeake being about a quarter of a mile above the Vim and the Patapsco somewhat

less below. The Vim was slightly to the eastward of a line drawn between the other dredges. As the tug and tow approached the Vim, after they had passed the Chesapeake, those on the Vim noticed that the Fort George was not steering after the Smith but was heading on a course to the eastward of the course of the tug, and, it is alleged, that while they were in this position, the tug by an extraordinary effort changed the course of the tow rapidly to the westward, so that the barque was headed directly for the northerly end of the Vim and the tug cast off the hawser between the tug and the tow so that all control by the tug was lost. While the tug passed the Vim in safety on the eastward side, the barque continued on her course and collided with the northerly end of the Vim about the center, doing the damage complained of. The libellant charges the tug with fault: (a) in failing to direct the course of the barque so as to avoid the Vim, (b) in failing to keep the barque a safe distance from the Vim, (c) in casting off the hawser, (d) in failing to avoid a collision with the Vim while lying in the channel engaged in her lawful occupation.

Neall, in his answer, after various denials and admissions, alleged as follows:

"Tenth: Further answering, the respondent alleges as follows:

On December 8th, 1906, at about 7 A. M., the tug 'Sommers N. Smith,' being well and sufficiently manned and equipped, left the port of Philadelphia for the Delaware Breakwater, with the Bark 'Fort George' in tow, astern upon a hawser of the usual and proper length. The bark 'Fort George' was in charge of a licensed pilot, who, with the captain of the bark, during all of the times hereinafter referred to, was at the stern of said bark, and who was in command and in control of her navigation.

The weather was clear, the wind light, northwest, and the tide about low water.

In the neighborhood of Newcastle, Delaware, on the voyage down the river, the tug 'Sommers N. Smith' approached the dredges 'Chesapeake' and 'Vim,' both of which were engaged in deepening the channel along the Deep Water Point Range. The upper of the dredges, the 'Chesapeake,' was three-quarters of a mile, or thereabouts, above the 'Vim,' and the signals on each dredge indicated that the 'Sommers N. Smith,' with the 'Fort George' in tow, should pass on the starboard, or eastward, side of the dredges.

The tug and tow passed the dredge 'Chesapeake' safely to the eastward. Both vessels, the 'Sommers N. Smith' and the 'Fort George,' then and subsequently, and until the happening of the collision hereinafter mentioned, were in the channel, in water of sufficient depth for their proper navigation, and the course pursued by the tug 'Sommers N. Smith' was the course usual and proper under the circumstances.

After passing the dredge 'Chesapeake,' the 'Sommers N. Smith' observed that the 'Fort George,' either through inattention on the part of those in charge of her navigation, or in consequence of defect in her equipment for steering, or for some other cause occurring without any negligence or want of proper care or proper navigation on the part of the 'Sommers N. Smith,' failed to follow the 'Sommers N. Smith,' but held a course a point and upwards to the westward of that held by the tug, and such as involved risk of collision with the dredges. The tug thereupon blew two blasts of her whistle as a signal to the 'Fort George' to hard-a-starboard her wheel, but the 'Fort George' failed to change her course. The 'Sommers N. Smith,' at the same time these signals were blown to the 'Fort George,' hard-a-starboarded her own wheel and pulled well off to the eastward in an attempt to haul the 'Fort George' to the eastward and clear of the dredge. It became apparent to the navigating officers of the tug that it was impossible to pull the 'Fort George' against her helm, and the master of the 'Sommers N. Smith' called to the pilot on the 'Fort George' to inquire if the 'Fort George' could pass to the westward of the

dredge. The master of the tug was answered in the affirmative, and thereupon immediately stopped the tug in order to slack the hawser, and caused it to be cut, so as to enable the 'Fort George' to port her helm and pass to the westward of the dredge as the pilot had indicated the 'Fort George' was able to do.

The 'Fort George,' however, still continued upon the same course, and notwithstanding there was sufficient time and space if the 'Fort George' had been properly equipped and properly navigated, by porting her helm, for the bark to have passed the dredge to the westward, or, by dropping her anchor, to have avoided any collision, the 'Fort George' was permitted, in consequence of the inattention and negligence of those in charge of her navigation or by reason of defective equipment, or for some other cause, without any negligence or improper navigation on the part of the 'Sommers N. Smith' to come into collision with the dredge 'Vim,' thereby inflicting certain damage, which was greatly exaggerated in said libel. And respondent alleges that the said 'Sommers N. Smith' was at the time of the said collision well and sufficiently manned and equipped and preserving the proper lookout; and that the said collision and the damages alleged to have been sustained by the dredge 'Vim' in consequence thereof were not due in any respect to the negligence or carelessness of the master of the tug 'Sommers N. Smith' or any of her crew."

Prior to filing the above answer, Neall filed a petition, alleging practically the same facts and that the faults of the collision were with the Fort George, and caused her to be brought into the action. The charges of fault against the barque were as follows:

"(a) In failing to keep a proper lookout.

(b) In failing to observe the position of the dredge 'Vim.'

(c) In failing to observe the course of the tug.

(d) In failing to steer after the tug 'Sommers N. Smith.'

(e) In failing to direct the course of the 'Fort George' so as to avoid the dredge 'Vim.'

(f) In failing to keep the 'Fort George' at a safe distance from the dredge 'Vim.'

(g) In failing to drop an anchor to avoid coming into collision with the dredge 'Vim.'

(h) In failing to do anything to avoid a collision with the dredge 'Vim' and in other respects to be made known at the trial."

The claimant of the barque, in connection with some admissions and denials, alleged as follows:

"On December 8, 1906, at about 7 A. M. the tug Sommers N. Smith left the Port of Philadelphia for the Delaware Breakwater with the Barque Fort George in tow astern upon a hawser. The Barque Fort George was in charge of a licensed pilot who, with the captain of the Barque, was during all of the times hereinafter referred to, on the poop deck at the stern of said Barque near her wheel, and who was directing her steering. Aside from the mere duty of steering after the tug, which rested upon and was performed by those in charge of the Fort George, the navigation of the Fort George was entirely under the direction and control of the tug Sommers N. Smith. The weather was clear and the wind light. In the neighborhood of New Castle, Delaware, the tug Sommers N. Smith approached the dredges Chesapeake and Vim, both of which were anchored in the channel with signals set indicating that vessels passing down the river should pass to the eastward of the said dredges. Throughout the voyage those in charge of the Fort George had steered directly after the tug, as was their duty, and prior to passing the dredge Chesapeake the Fort George had answered her helm readily and had followed exactly in the course of the tug. Both tug and Barque passed safely on the eastward side of the dredge Chesapeake. Shortly after passing that dredge, however, the channel was found to be extremely shallow, so that the barque was barely clearing the bottom, if she was not slightly in the mud. On account of the insufficient depth of water the Fort George began to 'suck the bottom' and failed to answer her helm. At this time she was heading almost directly for the

dredge Vim which was between a quarter and a half a mile away, and was proceeding under a starboard wheel.

Upon observing that the ship did not answer her helm readily the pilot of the Fort George ordered the wheel put hard-a-starboard, which was done, but without effect. Shortly afterward the tug blew two whistles, whereupon the pilot of the Fort George shouted to the captain of the tug that the Barque would not steer. The tug had meanwhile been sheering off to the eastward. Instead of continuing to tow on the Barque, however, the tug, immediately upon reaching a position well off to the eastward of the Barque, slowed down and the captain of the tug called to those on the Fort George to cast off the hawser and port her helm. This order the pilot of the Fort George countermanded and refused to obey, as the Fort George was then only about one of her lengths from the dredge, and it was impossible by the operation of her helm alone for her to go clear on either side of the dredge. The captain of the tug, however, immediately after giving the order to cast off the hawser, ordered it cut and it was immediately cut by one of the crew of the tug. The Fort George was thus left helpless, except for the action of her helm, which, as above stated, was extremely slight. Upon seeing that the hawser had been cut the pilot ordered that the anchor be let go, but upon seeing that it was too late to prevent a collision by this means and fearing also that an anchor dropped in such shallow water might punch a hole in the bottom of the ship, he immediately countermanded this order. The Fort George, with her helm still hard-a-starboard was carried on by her own momentum past the dredge Vim, passing on the eastward side of said dredge, which she barely touched in passing. So far as those aboard the Fort George could observe, that vessel did not touch the body of the said dredge, but merely the chains by which the buckets were suspended from the A frame of the said dredge. These chains were brushed by the jib-boom guys on the starboard side of the Fort George. The Fort George then drifted on for about three ship's lengths and went firmly aground at a point somewhat nearer the Delaware shore than the position of the Vim. The helm of the Fort George remained hard-a-starboard until after the collision. Had the tug Sommers N. Smith continued to tow on the Fort George instead of slacking and cutting her hawser, the Fort George would undoubtedly have been drawn clear of the dredge. There was not sufficient depth of water to westward of the dredge Vim for the Fort George to have passed on that side, even if she could have directed her course sufficiently to westward, which she could not have done by the action of her helm alone."

During the trial, faults were alleged by the Fort George against the Smith as follows:

"(1) In that, if the power of the Sommers N. Smith was insufficient to control the movements of the Fort George in the shallowest water to be met with, the tug should have anchored during the lowest water.

(2) In that no sufficient lookout was maintained on the tug and in that the tug did not seasonably discover that the Fort George was not following directly in the course of the tug.

(3) In that the tug did not seasonably turn to the eastward and did not seasonably use her utmost power to control the heading of the Fort George which was not under the control of her own helm as the tug with due diligence would have discovered earlier than she did.

(4) In that the tug when she turned under a starboard helm did not use a hard-a-starboard helm and did not turn as rapidly and as far to eastward as possible.

(5) In that the tug slacked and cut the towing hawser and in that the tug did not continue towing with her utmost power on the Fort George."

The testimony shows that at the time of the collision the tide was nearly ebb. The water in the channel was only 22½ feet deep, while the barque was drawing 22 feet. There was therefore not more than 6 inches between the vessel and the bottom of the river. It is well known that vessels will not steer well under such circumstances and on this occasion she refused to yield to her helm but having been point-

ed at the dredge, kept on and struck her, notwithstanding a change of the helm to endeavor to carry her to the eastward. It was the duty of the master of the tug to know the danger of attempting to tow the barque when the water was so low. The position of the Vim was well known and when the Smith undertook to tow the barque in her vicinity, she took the risk of what would probably ensue. The danger was recognized too late for effective preventive measures. The cutting of the hawser, as ordered by the master of the Smith, was not in time to prove of any effect even if it was not a fault on the part of the Smith to thus give up control of her tow, leaving it helpless. It is not established that the Fort George agreed with the tug to pass to the westward of the dredge. It was too late to drop her anchor and it was a dangerous thing to do in any event. The Smith should be condemned for these reasons.

The situation was also known to the barque. Her pilot was aware that the dredges were lying in the channel, of the state of the tide and the draft of the barque. It was evidently the duty of the pilot on board of the barque, or of her master, to warn the tug of the facts and that it was not safe to proceed. In allowing the tug to go on, the barque participated in the risk and must bear a part of the consequences.

There will be a decree against the respondent Neall and the barque, with an order of reference.